Argued March 2, decided March 21, 1911.

## BURROUGHS v. THE CURTISS LUMBER CO.

[114 Pac. 103.]

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

1. On an issue of contributory negligence of an employee in oiling machinery in motion against orders, he could not show how other employees oiled.

EVIDENCE—OPINIONS—WITNESS' QUALIFICATION.

2. A witness could not testify to the proper time for oiling machinery without first showing knowledge on the subject.

EVIDENCE—OPINIONS—WITNESS' QUALIFICATION.

3. That one has been a laborer around a sawmill does not qualify him to give an opinion on management and care of machinery.

EVIDENCE—MODELS—ADMISSIBILITY.

4. It was not error to admit in evidence a plat and a model of machinery, where defects therein were so clearly pointed out that the jury could not have been misled.

APPEAL AND ERROR—HARMLESS ERROR—REMARK BY JUDGE.

5. A trial judge's remark that it would not be practicable to show a certain part of machinery on a model prepared on a small scale was not reversible error.

Master and Servant — Injury to Employee — Guarding Dangerous
    Machinery.
6. Whether it is negligent to permit a set screw on a revolving shaft
to remain unguarded depends upon the surrounding circumstances and
whether reasonable prudence demands it.

Master and Servant—Guarding Machinery—Statutory Provision.
7. Laws 1907, p. 302, requiring certain machinery to be safeguarded,
only requires reasonable safeguards for machinery which can be prac-
ticably guarded.

Master and Servant—Negligence—Failure to Guard Set Screw—
    Jury Question.
8. Whether it was negligent to omit a guard from a set screw on a
revolving shaft in a sawmill, *held* under the evidence a jury question.

From Marion:   George H. Burnett, Judge. ·

Statement by Mr. Justice McBride.

This is an action by S. J. Burroughs against The Cur-
tiss Lumber Company to recover damages for an injury
received by plaintiff while he was at work as an oiler
on defendant's sawmill.   Among other things, it is
alleged that defendant negligently suffered certain parts
of its machinery to remain and be operated without
proper safeguarding appliances and particularly allowed
dangerous, unlawful, out of date, and prohibited set
screws to be used and kept in operation in its mill; and
especially set out that, while plaintiff was engaged in his
occupation of oiling the machinery, his clothing was
caught upon a rapidly revolving shaft, and he was
seriously injured thereby.

The answer denies every allegation of negligence, and
alleges contributory negligence on plaintiff's part as well
as knowledge of the risks and assumption thereof.   It
is alleged that plaintiff had been instructed not to oil
the machinery at the place where the accident occurred,
while the mill was running, but that he did so in disregard
of such instructions, and that such negligence was the
proximate cause of his injury.

There is evidence tending to show that plaintiff, while
oiling that part of the machinery known as the feed

works, was caught by a set screw, projecting about three-fourths of an inch beyond the collar, on a rapidly revolving shaft, and was whirled around it, tearing his clothing from his body and seriously and permanently injuring him; that the shaft, set screw, and collar were all unguarded and open; and that the set screw was invisible while in motion. Plaintiff also testified that the set screw had never been observed by him when the machinery was at rest, and that its presence there was unknown to him.

In support of plaintiff's contention that he was oiling at a proper time and place, and in the manner customary in the mill, he called Roy Crabtree, who testified that he had worked in the mill two years, and was then asked this question:

"Do you know how this feed works, where he was hurt, was oiled, when, during the time you worked there?"

The question was objected to as incompetent, immaterial, and irrelevant, and the objection was sustained. Plaintiff's counsel then asked this question:

"What was the proper time of day, or times, for Mr. Burroughs to oil this feed works where he was hurt?"

The same objection was made to this question and was sustained.

A witness for defendant, familiar with the premises, exhibited a drawing made by him, which he testified showed the general location of the feed works, shafting pulleys, and the place where plaintiff was injured. He pointed out, on the plat, the shaft, upon which the safety collar was placed, and the collar, and explained where the set screw would be, but it was not pictured thereon. Counsel for plaintiff objected to the admission of the plat for the reason that the set screw was not shown upon it, and his objection was overruled. A model of the feed works was also introduced which the maker testified was

correct, except that a certain part of timber should be 8x10 instead of 10x10, as shown, and that a certain other timber or part of the works should be 2x2½ instead of 2½x2½, as shown. He also testified that he did not put on a model of the collar and set screw, because the scale of the model was so small that they would be hardly visible; but he pointed out to the jury the place on the model where they would belong and stated that otherwise the model was a correct representation of the machinery. Counsel for plaintiff objected to the introduction of the model because it was shown to be incorrect, and after some discussion the court said:

"The model may be introduced for the purpose of illustration. The jury has a right to understand the absence of the collar. It would be impractical to put a collar on that size model."

The counsel saved an exception, but whether to the ruling of the court, admitting the model, or to the above-quoted remark, does not appear from the bill of exceptions.

The court, among other matters, gave the following instruction:

"I cannot say to you as a matter of law that the allowing of the protruding set screw in its machinery is negligence. It depends upon the circumstances under which it was used and under which the accident happened; and you will consider, in that connection, whether the defendant acted as a reasonably prudent man would act in the care of his own affairs, under like circumstances. If, under all these circumstances, the defendant did so act, it is excused from any liability. If it did not so act, and the injury resulted from its failure thus to act, you should find for the plaintiff."

The defendant had a verdict, and plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Martin L. Pipes* and *Mr. Carey F. Martin,* with an oral argument by *Mr. Martin.*

For respondent there was a brief over the names of *Mr. Ralph W. Wilbur, Mr. James K. Weatherford* and *Mr. George G. Bingham,* with an oral argument by *Mr. Wilbur.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. There was no error in the rejection of the testimony of Roy Crabtree. The issue raised by the answer was that plaintiff oiled this part of the machinery while it was in motion, which was contrary to orders. How anybody else may have oiled it was wholly immaterial; that some other person or persons might have been negligent in their work would not excuse plaintiff.

2. The subsequent question, "What was the proper time of day to oil the feed works?" was also incompetent, as the witness was not shown to have any knowledge on that subject.

3. The fact that he had been a laborer somewhere about the mill would not qualify him to give an expert opinion as to the management and care of the machinery.

4. There was no error in admitting the plat and model after the necessary explanations had been made. They were valuable, no doubt, in giving the jury a general idea of the situation, and the defects or omissions were so clearly pointed out that the jury could not have been misled.

5. The remark of the court that it would not be practicable to show a collar upon that size of a model was made during the ruling on the objection to testimony, and in any event it does not appear that the exception taken was intended to cover it, but was to the ruling itself and not to the language in which it was couched. Even if erroneous, it is difficult to see how it could have influenced or misled the jury who had the model before their eyes.

We find no error in the instructions of the court which

were full, covering the whole case, and exceedingly fair to the plaintiff. The instruction particularly complained of correctly stated the law.

6. This is not an action begun under the act of 1907 (Laws 1907, p. 302), which provides for an action by any employee whose injury should be occasioned by failure of the employer to properly safeguard certain machinery, among which set screws are enumerated, and which makes violation of its provisions by an employer a misdemeanor, punishable by fine, and which allows an injured employee to recover to the amount of $7,500.

Counsel claims that the law makes the maintaining of a projecting set screw unlawful, and the court should have instructed the jury that the act of defendant, in allowing this screw to remain in the condition it was shown to have been in at the time of the accident, was negligence *per se.*

7. In *Peterson* v. *Standard Oil Co.,* 55 Or. 511 (106 Pac. 337), we held that where the laws of the state, for the protection of the public, have prescribed that certain precautions shall be observed, that such requirements constitute a legislative declaration of the minimum of care necessary under the circumstances, and that a less degree is negligence as a matter of law, and conceding for the purposes of the argument that the penal provisions of the act, before alluded to, apply to a common-law action, it will be seen that there is no absolute declaration of the statute that set screws, under all conditions, shall be safeguarded. The statute only requires reasonable safeguards for these and all other machinery which it is practicable to guard.

8. It was for the jury, and not the court, to say whether it was practicable for the defendant under the circumstances to safeguard this shafting, collar, or set screw, and, if they found that it could be so protected, to predicate negligence upon the failure of defendant to use the

necessary precautions. A projecting set screw upon this shafting may or may not have been necessary. A protected one or one sunk to a level with the shafting might have been better or might have been impracticable. This was a matter of evidence and entirely for the jury, and not a matter of law for the court, whether viewed from the standpoint of the statute or from that of the common law.

The judgment is affirmed.          AFFIRMED.

Mr. Justice BURNETT took no part in this decision.