Argued November 14, 1929; affirmed March 11; rehearing denied May 20, 1930.

## HILGEDORF v. BERTSCHINGER

(285 P. 819)

*Frank J. Lonergan* of Portland (J. N. Hart of Portland on the brief) for appellant.

*Paul R. Harris* of Portland (Raffety & Pickett and Davis & Harris, all of Portland, on the brief) for respondent.

BEAN, J. The complaint avers, in substance, that defendant occupies an office in the city of Portland, Oregon, advertises himself as a naturopath and gives treatment to patients as such naturopath.

On and prior to May 15, 1926, plaintiff was suffering from a physical disorder, having trouble with the

regularity of her menses. On May 15, 1926, plaintiff called on defendant to treat her and he undertook said treatment of plaintiff, but without the knowledge of plaintiff, defendant performed a surgical operation on plaintiff and in the execution of such surgical operation defendant punctured the wall of plaintiff's uterus, performed said operation and administered said treatment in an unscientific, insanitary, careless and negligent manner, so that infection developed, and plaintiff was compelled to be taken to the hospital and have a second surgical operation performed to correct the damage done by defendant.

The defendant was careless and negligent in his care and treatment of the plaintiff in the following particulars:

1. The defendant performed said operation in an unskilful and unscientific manner, in that in performing said operation he wrongfully, carelessly and negligently punctured the wall of plaintiff's uterus.

2. Defendant was negligent and careless in that he performed said surgical operation and administered said treatment in an insanitary and in an unscientific manner, and as a result thereof allowed infection to start and failed to take proper care of plaintiff after said infection had set in.

3. Defendant was careless and negligent in that defendant, after said infection had set in and after plaintiff was in pain and agony as a result thereof, wilfully failed, neglected and refused to give the plaintiff proper care and wilfully endeavored to keep plaintiff from obtaining any other assistance.

The answer of defendant consists of a general denial, except that he admits that defendant occupies an office in Portland and advertises and gives treatments as a naturopath.

At the appropriate time the defendant moved the court to direct a verdict in favor of defendant and assigns the refusal of the court to grant such motion as error. Citing *Hills v. Shaw*, 69 Or. 461 (137 P. 229) ; *Emerson v. Lumbermen's Hosp. Ass'n.*, 100 Or. 472, 477 (198 P. 231).

Defendant contends that the evidence did not support the allegation of negligence. The claim of defendant appears to be that he did not perform a surgical operation upon plaintiff, that he only used instruments for the purpose of inspection.

The testimony of the plaintiff tended to show that the first time plaintiff visited defendant's office and he treated her for her complaint, the doctor had her get on a reclining chair and he used instruments in and put a packing in her vagina; that she returned on Monday and got on the chair and he placed an electrical instrument inside of her and caused her considerable pain and put in another packing; that she was terribly sick afterward that day. Tuesday the defendant was called and again used the instrument and it hurt so badly that she begged him to stop. She then testified as follows:

"* * * and he told me that there was a fleshy mass that he couldn't seem to get out but that it probably would pass away in the afternoon, but he would be back at four, and I noticed then he had quite a few instruments with him. When he left I became worse. He told me I would feel better, but I kept getting worse every minute. It was eleven-thirty, I think, when he left and my husband was going to be home at twelve, but the pain was so great I begged the landlady to call my husband before, so he got there about a quarter to twelve. So the doctor seemed nervous and he told me,—he said, 'Whatever you do, don't call another doctor,' he said, 'because they will just say it is blood poison.'" * * *

That the instruments defendant used on her were about nine inches long and narrow. "They seemed to have little prongs or something on the end," that came together. That the use of them by defendant caused much blood to flow from plaintiff.

About 12 M. of that day she was taken to a hospital and an operation upon her was performed and an examination made by Dr. Leland V. Belknap of Portland, a regular physician and surgeon. Dr. Belknap testified, among other things, to the effect that about May 18 she had a chill, considerable pain and a little temperature. They gave her an anaesthetic and opened up her abdomen, found the vagina packed with unsterilized lambs' wool, the uterus dilated, part of the lambs' wool in the uterus itself and there was infection; that an operation had been performed upon her; "that her uterus had been punctured (Dr. Belknap stated) so we proceeded to open the abdomen and found a hole as large as your finger, a piece of the intestines poked in it." That the uterus had been punctured by the use of some instrument recently.

■ The defendant denies that he performed any operation upon plaintiff. The testimony tended to support the allegation of the complaint. There was ample evidence to take the case to the jury and no error in denying defendant's motion for a directed verdict. Defendant contends that:

"A physician and surgeon, which includes one who is entitled to practice as a naturopath, is entitled to have his treatment of his patient tested by the rules and principles of the school of medicine to which he belongs." Citing in support 21 R. C. L. 383, 384.

■ If a patient seeks to be treated by a naturopath, and such practitioner follows the methods usually

employed by a naturopath, such practitioner is not negligent simply because a regular licensed physician of another school would have treated the patient for that particular disease by some other method. Where on the other hand, a naturopath practitioner, in the treatment of a patient, uses surgical instruments and unsterilized lambs' wool for packing the vagina of a patient, as the testimony tended to show the defendant did, then such practitioner is working in the field where a regular licensed physician and surgeon is qualified to testify. The defendant did not profess to be a surgeon and stated that he would not perform a surgical operation.

The conflicting testimony raised a question for the determination of the jury. From 21 R. C. L., pp. 383, 384, we take the following excerpt:

"The rule which confines the inquiry as to a practitioner's skill and care to the rules of the principles of the school of medicine to which he belongs does not, however, exclude the testimony of physicians of other schools or experts in other lines when that testimony bears on a point as to which the principles of the schools do or should concur, such as the dangers incident to the use of X-rays, or the existence of a condition that should be recognized by any physician, e. g., that the patient's hip joint was dislocated and not affected by disease   *   *   *."

■ Dr. Belknap, as a regular physician and surgeon, was qualified to testify as to the condition in which he found the plaintiff when he performed the operation upon her and made an examination and whether in his opinion the treatment of plaintiff by defendant was proper or not, and also in regard to the use of unsterilized lambs' wool for packing: 22 C. J., § 758, p. 663; *Lehman v. Knott*, 100 Or. 59, 70 (196 P. 476).

We quote from the latter case at p. 70 et seq. as follows:

"In a malpractice case the question whether a physician has in a given case adopted the proper treatment is one in which the opinions of medical men may be received in evidence, and they may state whether in their opinion the treatment was proper or not, whether it was in conformity with the rules and practice of the profession: Rodgers on Expert Testimony (2d Ed.), § 64.

In connection with his evidence that of plaintiff indicated that the defendant used an instrument upon her and punctured her womb. The question as to whether or not plaintiff's injury was brought about by the negligent conduct of the defendant was one of fact exclusively for the jury: *Hamilton v. Kelsey,* 126 Or. 26 (268 P. 750, 753).

The hypothetical question propounded to Dr. Belknap and Dr. Morrow was proper under the rule announced in *Lehman v. Knott,* supra, and according to the authorities there cited. The testimony did not invade the province of the jury. There was no error in overruling the objection of defendant thereto.

■■ Defendant complains that these doctors were permitted to testify after the case was closed. It was within the sound discretion of the trial court to allow the case to be opened and further testimony to be introduced by plaintiff. Defendant was given the privilege of answering such testimony. There was no abuse in the exercise of such discretion or error in this regard.

Finding no error in the record, the judgment is affirmed.

Coshow, C. J., and Belt, J., concur.

Hamilton, A. A. J., took no part in this decision.